UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARTHA THOMPSON, et al.,

        Plaintiffs,

       v.                             C-1-05-648

STEVE GOINS, et al.,

        Defendants.

**<u>ORDER</u>**

This matter is before the Court upon the Motion for Summary Judgment filed by Steve Goins, the New Boston Police Department, and the Village of New Boston (doc. no. 12), the Motion for Summary Judgment filed by Portsmouth Police Department and the City of Portsmouth (doc. no. 13), Plaintiffs' Memorandum in Opposition (doc. no. 18), Defendants' Reply in support of their Motions for Summary Judgment (doc. nos. 24 and 25), and the highlighted version of the Proposed Findings of Fact and Conclusions of Law filed by the plaintiffs (doc. no. 19) .

Additionally, defendants move to strike the affidavits filed in support of plaintiffs' Memorandum Contra Summary Judgment (doc. nos. 26 and 27), asking that they not be considered by the Court.  Plaintiffs filed a Response in Opposition (doc. no. 28) and defendants filed a Reply (doc. no. 30).  Defendants allege the affidavits do not meet the requirements of Civil Rule 56(e) and they blatantly contradict their prior deposition testimony.

2

Defendants also move to strike the affidavits of Stephanie Bowling, age 12, and Tashia Watts, age 15, for non-disclosure under Rule 26. A hearing on all pending matters was held June 26, 2007.

I.

It is well established that in response to a Motion for Summary Judgment, the nonmoving party cannot rely upon conclusory allegations, but must go beyond the pleadings to identify evidence sufficient to raise a genuine issue of material fact. Fed. R. Civ. P. 56(e). The Sixth Circuit has ruled that "a party cannot create a genuine issue of material fact by filing an affidavit, after a Motion for Summary Judgment has been made, which essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997). See also, *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416, 433-434 (6th Cir. 2006) (plaintiff's affidavit properly stricken as it could not be reconciled with plaintiff's earlier deposition testimony). As the Court explained on the record at the hearing, the Court will view the affidavits with these rules of law in mind and is capable of identifying the conclusions and information which cannot be relied upon to defeat the Motions for Summary Judgment.

All parties had notice before the commencement of this lawsuit that Bowling and Watts might have personal knowledge of this incident, however, until defendants contested the method of entry to Mrs. Thompson's home in their Motions for Summary Judgment, their testimony was not necessary to plaintiffs' case. Defendants have not taken the deposition of either Bowling or Watts. Discovery has been closed, however, any prejudice that defendants may have suffered can be solved by granting them permission to take depositions of Bowling and Watts if they desire to do so. The defendants are hereby **GRANTED** permission to take the depositions of Bowling and Watts.

3

Pursuant to the foregoing and the record made during the hearing, the Motions to Strike are **DENIED**.

II.

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The moving party bears the initial responsibility of instructing the court on its basis for the motion.

The burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denial of his pleading, but . .. must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253 (1968)). Once the burden has shifted, the party opposing summary judgment cannot merely reassert its pleadings and previous allegations. It is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

4

The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970)).  The court is not to weigh the evidence and determine the truth of the matter but it is to decide whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party. *Id.* at 249 (citing *Cities Serv.,* 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.,* 391 U.S. at 290, summary judgment may be granted. *Anderson,* 477 U.S. at 249.

III.

Plaintiffs filed a complaint in this action on October 10, 2005, against Steve Goins, in his individual capacity and/or in his capacity as agent of and/or Captain with the New Boston Police Department, the New Boston Police Department/Village of New Boston, Ohio, the Portsmouth Police Department/City of Portsmouth, Ohio, and John Does, officers in each of the respective police departments.   Presently, Captain Goins is the sole individual party defendant.  The parties agree that the only other defendants in the case are the Village of New Boston and the City of Portsmouth.  All other entities mentioned in the Complaint are **DISMISSED WITH PREJUDICE**.

5

IV.

On the morning of August 2, 2005, Captain Goins of the Village of New Boston Police Department investigated a vehicle break-in at 4312 Rhodes Avenue which is near the residences of both plaintiffs. As Captain Goins spoke with Kirby Lawson regarding the break-in, another individual told him that he had seen possible perpetrators of the break-in and provided an address of 4332 Millbrook Avenue, Apt.2. Captain Goins interviewed Thompson and that individual, Randy Stevens, in the vicinity of 4332 Millbrook Avenue, Apt. 2, at about 1:00 P.M. on August 2, 2005, regarding the break-in. (Thompson depos. P.64).

In the afternoon of August 2, 2005, New Boston residents Michael Moore and his juvenile son, Josh, came to the New Boston Police Department. Josh Moore told Chief Clark and Captain Goins that he had obtained marijuana from "Randy" at Apartment 2 at 4332 Millbrook Avenue and described him in such a way that Captain Goins believed Randy was the person with whom he had spoken regarding the break-in of Kirby Lawson's son's vehicle. Captain Goins spoke with a prosecutor who advised he had probable cause to obtain a search warrant for the Millbrook Avenue address. He then went to Judge Schisler of the Scioto County Municipal Court with an affidavit and search warrant. Judge Schisler issued the search warrant for 4332 Millbrook Avenue, Apt.2, New Boston.

The facts presented under oath to Judge Schisler by Captain Goins in order to secure the search warrant were:

6

I have been a police officer for the Village of New Boston going on 19 years of service.  Today, August 2, 2005, at around 1:30 pm, Michael Moore a New Boston resident brought his 12 year old son Josh Moore into the police station after Mr. Moore found that his son Josh had marijuana joint on him. Josh Moore told myself and Chief Clark that he went to the apartment located at 4332 Apartment 2 this morning and that a man named "Randy" who is a older white male, dark tan, sold Josh the marijuana joint for five dollars.  Josh said he went into the front living room where the man "Randy" had a large tin can that had a plastic baggie full of marijuana joints.  Earlier today at around 10:30 am I was at 4312 Rhodes Avenue which is located near 4332 Millbrook Avenue.  I was there doing a follow up on a car break-in and talking with the victim.  While there a male walked by and identified himself to me and the victim as Randy Stevens who said he lived in Apartment 2 4332 Millbrook Avenue.  This male went on to tell me that he saw the possible suspects on the car break-in.   This male who identified himself as Randy Stevens appeared to be in his late twenties or early thirties and did a dark tan complexion.

We request this search warrant to seize the marijuana or any other illegal narcotic drugs and or prevent them from being disposed of by the suspects at 4332 Apartment 2, Millbrook Avenue.

After the search warrant was obtained,  Captain Goins requested assistance in executing the search warrant from the City of Portsmouth.  Officers Leach and Davis of the City of Portsmouth Police Department responded to the Millbrook Avenue address. Thompson was not present in her apartment when the officers entered her apartment. When Thompson walked into her apartment, Captain Goins who was inside, approached her, and asked if she was the resident who lived there.  Thompson had never met Captain Goins before August 2, 2005.  Thompson testified there were at least 2 officers including Captain Goins in her apartment when she arrived, and she was uncertain if there were more than 2 officers in the apartment.

7

Goins asked her if she would have a seat on the couch and questioned her about Randy Stevens.  Thompson told him Randy Stevens was dating  Starleen Whitt who lived next door.  Goins then used Thompson's cell phone to make a call.  After he completed the call, Goins handed Thompson the search warrant and apologized indicating a mistake had been made.

At this point, it is objectively reasonable to conclude that any reasonable police officer would know that the information provided by Josh Moore was unreliable.

Thompson testified that she was not touched, handcuffed, or in any way physically abused; after the police officers left her apartment nothing was missing; the officers did not tear her home apart or do anything that left an indication that a search had taken place except for her front door; both police officers were polite while they were in her apartment, and she was not mistreated in any way.

No evidence of any illegal activity was found and no charges were brought against her.

Thompson testified she has no reason to believe that anybody from the City of Portsmouth or the Village of New Boston held any personal malice or ill will toward her before the day of this incident.

Because no one was present in Thompson's apartment to answer his knock on the door, Captain Goins forced open the front door and entered the apartment.  Thompson claims he damaged the front door, frame and lock which she had repaired at the cost of $125.00.  Captain Goins denies he damaged the door, frame and lock.  He claims the door was ajar and he simply pushed it open after knocking.

8

Even though Captain Goins now knew the information provided by the Moores was unreliable, upon leaving Thompson's apartment, Captain Goins proceeded next door to the residence of plaintiff Whitt. He demanded that she permit him to search her house. She refused and instructed him she would not allow any search without a warrant. Captain Goins and at least one other officer who was under Captain Goins' direction and control entered her home against her will. Whitt testified that Goins followed her into her apartment, and an officer also entered through the back door which was not locked. Whitt testified she went to the bathroom and the officer who had entered through the back door told her not to shut the door. While she went to the bathroom, Thompson's daughter stood between her and the police officer who appeared as if he was trying not to look at her. Whitt testified that the officers were in her apartment for a short period of time. They searched her home. No evidence of drugs or illegal activity was found at her residence. She was not handcuffed and did not come into any physical contact with the officers. There were no criminal proceedings instituted against Whitt as a result of this incident. There was no warrant for the arrest of Stevens. There was no warrant to search Whitt's home. After Captain Goins found nothing at Thompson's home, he had no reliable information to support probable cause to search Mrs. Whitt's home or a reasonable suspicion to interrogate Whitt.

V.

To succeed on a claim for a violation of § 1983, plaintiffs must show that (1) a person (2) acting under color of state law (3) deprived them of rights secured by the United States Constitution and its laws. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).

9

A political subdivision cannot be liable under §1983 simply because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A political subdivision may be liable if, when committing the constitutional violation, the employee "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. For the political subdivision's policy to be actionable, it must be the driving force behind the employee's constitutional violation. *Id.* at 691.

In addition, the political subdivision may be liable for inadequately training its employees when "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Deliberate indifference constitutes a significant burden and it requires proof of "continued adherence to an approach [the political subdivision] know[s] or should know has failed to prevent tortuous conduct by employees." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, n5(1997). The municipality's failure to train must be "closely related to" or "actually caus[ed]" the plaintiff's injury. *Id.* A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor,

> "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999).

10

## VI. Qualified Immunity

Qualified immunity protects government officials from civil liability when acting in their official capacities if their actions do " not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The reasonable person standard and qualified immunity allows a law enforcement official to make "reasonable mistakes." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir.2003)(citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When determining whether qualified immunity attaches, the Court uses a two-step sequential analysis. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). First, the Court investigates whether the facts, taken in the light most favorable to the plaintiff, show that the governmental official's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the alleged facts do not establish a constitutional right, then the officer is entitled to qualified immunity, *Id.*, but if there is a violation of a constitutional right, the Court next inquires whether the right was clearly established. *Id.* This inquiry is fact-specific, and, for a right to be clearly established, it must be "clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* at 202. Even if an officer violates the plaintiff's rights, he may be entitled to qualified immunity if he acted under a mistaken understanding as to what the law allows and the mistake was reasonable. *Id.* at 205.

11

In cases in which a warrant has been issued, individual officers are insulated from liability "unless the warrant application is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Packer v. City of Toledo,* 1 Fed.Appx. 430, 433 (2001); *Armstrong v. Melvindale*, 432 F.3d 695 (2006).

The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ."  It is presumptively unconstitutional for a police officer to enter someone's home without a warrant.  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994).

If a law enforcement officer "reasonably but mistakenly concludes," however, that the constitutional requirements for a search and seizure are present, he is entitled to qualified immunity.  *Anderson v. Creighton*, 483 U.S. 635 (1987).

**VII.**

Abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law.   *Clermont Environmental Reclamation Co. V. Hancock*, 474 N.E. 357 (Ohio 1984).

The tort of invasion of privacy includes four separate torts: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.  *Piro v. Franklin Township*, 656 N.E.2d 1035 (Ohio 1995).

12

Ohio Rev. Code Chapter 2744 grants political subdivisions broad immunity. Generally, a political subdivision is not liable for damages in a state law tort action allegedly caused by an act or omission of the political subdivision or an employee in connection with a governmental or proprietary function. Ohio Rev. Code § 2744.02 provides a three-tiered analysis to determine whether a political subdivision is immune from liability. First, a political subdivision is given a general grant of immunity. Ohio Rev. Code § 2744.02(A)(1). Second, the Court determines whether any of the five exceptions to the immunity apply to the political subdivision. Ohio Rev. Code § 2744.02(B)(1)-(5) lists the five exceptions as:

> (1) Injuries caused by the negligent operation of a motor vehicle;
> (2) Injuries caused by the negligent performance of proprietary functions;
> (3) Injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance;
> (4) Injuries caused by negligence on the grounds of a building used for governmental purposes; or
> (5) Injuries for which liability expressly is imposed by the Ohio Revised Code.

Third, if one of the exceptions in Ohio Rev. Code § 2744.02(B) applies, immunity is reinstated if the political subdivision can successfully argue a defense listed in Ohio Rev. Code § 2744.03.

Ohio Rev. Code § 2744.03(A)(6) provides that individual employees are immune from liability unless one of the following applies: (a) the employee's acts or omissions were manifestly outside the scope of employment or official responsibilities, (b) the employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner; or ( c) liability is expressly imposed upon the employee by a section of the Revised Code.

13

Malicious is defined as " harboring ill will," *Teramano v. Teramano*, 216 N.E.2d 375, 377 (Ohio 1966) or the desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Bush v. Kelley's, Inc.,* 247 N.E.2d 745 (Ohio 1969). An individual acts in a "reckless manner" "if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeil*, 559 N.E.2d 705, 708 (Ohio 1990)(quoting 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500.).

**VIII.**

Defendants contest the veracity of all of the plaintiffs' claims. Defendants also assert that, taking all of the facts as alleged by plaintiffs, defendants are still entitled to summary judgment because (1) Captain Goins did not violate plaintiffs' rights and is entitled to qualified immunity, (2) defendants New Boston and Portsmouth are not liable for failure to properly train Captain Goins and the other officers because they did not exhibit malice or deliberate indifference, and (3) the defendants are immune from plaintiffs' state law claims under Ohio Revised Code Chapter 2744.

14

Plaintiffs present the following facts:  On August 2, 2005, plaintiff Martha Thompson was visiting plaintiff Starleen Whitt in her residence next door.  Defendants Goins and the other officers involved arrived at Thompson's residence and proceeded to break down her front door.  After her children informed her the police were there, Thompson went over to her residence and found Goins and other officers inside.  They showed her a search warrant, told her to be seated,  and would not allow her children to come into the house for approximately 45 minutes.  They questioned her about alleged drug activity involving a person named "Randy."  Thompson told them he did not reside there.  She informed them that "Randy" lived next door, but offered them an opportunity to search her home.  She was informed that they already had.

Plaintiffs allege the search warrant was issued fraudulently without probable cause, however, plaintiffs present no evidence to support their claim that Captain Goins had any reason to know or suspect that the Moores were not reliable until after the search warrant was executed.  There is no evidence that the warrant was fraudulently obtained.  Goins reasonably believed he had probable cause for a search involving "Randy" at 4332 Apartment 2 Millbrook Avenue whom he had met earlier in the day.  Plaintiffs have failed to present any evidence to show that the warrant application is so lacking in indicia of probable cause that Goins' belief in the existence of probable cause was unreasonable until after he completed the execution of the search of Thompson's residence.  The prosecuting attorney and the judge found the evidence stated to be sufficient to establish probable cause to issue the warrant.  The search warrant is valid.

15

IX.

Captain Goins conducted the search of the Thompson residence in a reasonable manner under the authority of the valid search warrant and under plaintiffs' facts, it was objectively reasonable for Captain Goins to use force to open Thompson's front door and search the Thompson's home.

Construing the facts in a light most favorable to Thompson, the Court finds Thompson has failed to set forth specific facts sufficient to support her § 1983 claim.  She has failed to make a showing that she was deprived of rights secured by the United States Constitution and its laws.  Having failed to establish that Captain Goins violated her federal rights, an element essential to her case and on which she would bear the burden of proof at trial, summary judgment is appropriate on her § 1983 claim against Captain Goins. Captain Goins is protected by his qualified immunity in his execution of the search warrant at Thompson's home.

Plaintiff Whitt has set forth specific facts showing that there are genuine issues for trial on her §1983 claims against Goins.  As Whitt's rendition of what happened clearly indicates that Captain Goins and officers under his direct supervision and control had no probable cause to search Whitt's home, or even a reasonable suspicion to interrogate her, thus Captain Goins, when he did so, violated clearly established law and was objectively unreasonable in the search of Whitt's home and his interrogation of her.  As a result, Captain Goins is not entitled to qualified immunity for his actions directed toward Mrs. Whitt.  His Motion for Summary Judgment is **DENIED** as to Whitt's § 1983 claim.

16

## X.

A municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory.  *Monnell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978).  Rather, municipal liability is incurred only if "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Pembauer v. Cincinnati*, 475 U.S. 469, 477 (1986).  The requirement of an official policy distinguishes the acts of the employee from those of the municipality, insuring that the municipality is held responsible only for the latter.  *Pembauer* at 479-480.  In addition to providing proof of a relevant municipal policy or custom, the plaintiff must prove the policy or custom caused and was the "moving force" behind the alleged injury.  *Monnell* at 694.

An alleged lack of adequate training may not support a claim for municipal liability under section 1983 unless "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989).  Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be liable for such a failure under § 1983 *City of Canton*, 489 U.S. at 389.  Plaintiffs must identify a deliberately indifferent program of training and that the specific deficiency actually caused the constitutional violation.  *Ellsworth v. City of Lansing*, 34 F.Supp.2d 571, 577 (W.D. Mich. 1998).

17

Plaintiffs have failed to identify any unconstitutional policies, customs, or lack of training regarding search and seizure by the Village of New Boston or the City of Portsmouth. Chief Horner's affidavit does not support plaintiffs' municipal liability claim against the City of Portsmouth. Chief Horner's affidavit states that the Portsmouth Police Department has policies, and provides training in the area of searches and seizures. Plaintiffs have failed to produce evidence of a policy, custom, or training deficiency that has any causal connection to their alleged constitutional injuries. As a result, plaintiffs' § 1983 claims against the Village of New Boston and the City of Portsmouth are **DISMISSED**.

XI.

The New Boston Police Department and the City of Portsmouth Police Department are not entities capable of being sued. *Tysinger v. City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Hale v. Vance*, 267 F.Supp. 2d 725 (S.D. Ohio 2003); *Jones v. Marcum*, 197 F.Supp. 2d 991, 997 (S.D. Ohio 2002); *Glendale v. North Royalton* (1995), 104 Ohio App.3d 152, 661 N.E.2d 253, 258. Plaintiffs agree that the New Boston Police Department/Village of New Boston is one entity and the Portsmouth Police Department/City of Portsmouth, Ohio is one entity. To the extent the Complaint raises any claim against the New Boston Police Department and the Portsmouth Police Department, that claim is dismissed as a matter of law, since the Departments are not legal entities capable of being sued.

18

XII.

The rule, as set forth above, that a political subdivision is liable under 42 U.S.C. § 1983 only where the alleged violation of constitutional rights is caused by an unconstitutional governmental policy or custom applies with equal force to all plaintiffs' § 1983 claims against the City of Portsmouth and the Village of New Boston, including those arising under the Equal Protection Clause of the Fourteenth Amendment. *See, Oldham ex rel. Young v. Cincinnati Public Schools*, 118 F.Supp.2d 867, 873-74 (S.D. Ohio 2000). Again, the local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a governmental body under § 1983." *Id.*

XIII.

This entire incident occurred only after Captain Goins of the Village of New Boston obtained a valid search warrant for the Thompson residence. The City of Portsmouth was not involved in obtaining the search warrant but was merely called in as backup. Plaintiffs were not arrested, touched or mistreated in any way. Whitt pointed to no damage to any property in her apartment caused by the City of Portsmouth, and the only damage which plaintiff Thompson referred to was possible damage to her door. The mere display of force, even by pointing guns at individuals, does not support a § 1983 claim. *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989); *see also, Hinajosa v. City of Terrell. Tex.*, 834 F.2d 1223, 1231 (1988); *Molina v. Cooper*, N.D. Ill. No. 00C50230, 2002 WL 426035 (Mar. 18, 2002); *Raby v. Baptist Med. Ctr.*, 21 F.Supp. 1341, 1350-51 (M.D. Ala. 1998).

19

In the present case, no evidence exists that any custom or policy of the City of Portsmouth or the Village of New Boston led to the violation of any of plaintiffs' constitutional rights. As a result, these moving defendants are entitled to summary judgment in their favor on plaintiffs' claims under to 42 U.S.C. § 1983.

XIV.

Plaintiffs also contend in their memorandum in opposition that they have made federal claims for malicious prosecution and abuse of process under 42 U.S.C. § 1983. The *Thacker* line of cases cited by plaintiffs supports the contention that a federal claim for malicious prosecution (but not abuse of process) may exist. The *Thacker* court recognized that although the elements of a federal claim for malicious prosecution are not fully developed, they would include, at a minimum, (1) arrest, and (2) prosecution, (3) without probable cause. *Thacker v. Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). In the present case, the City of Portsmouth and its Police Department did not initiate any process whatsoever against plaintiffs. Rather, officers from Portsmouth merely responded to a call for assistance after Capt. Goins had obtained the search warrant. Plaintiffs were neither arrested nor prosecuted. It is axiomatic that all claims for malicious prosecution must include an element of malice. In the present case, both plaintiffs specifically admitted at deposition they have no reason to believe anyone with the City of Portsmouth or the Village of New Boston bore any ill will or malice toward them.

As a result, none of plaintiffs' claims against the City of Portsmouth or the Village of Boston under 42 U.S.C. § 1983 are viable as a matter of law.

20

Whitt has presented evidence that Captain Goins entered her residence without a warrant, thus violating the plaintiff's rights under the United States Constitution.  While the reasonable person standard and qualified immunity allows a law enforcement official to make  "reasonable mistakes" and defendants assert that they did not enter Whitt's house, construing the facts in the light most favorable to the plaintiff Whitt, the Court finds that Captain Goins' is not protected by qualified immunity; thus, his Motion for Summary Judgment in his individual capacity is **DENIED** as to the § 1983 claim of plaintiff Whitt.

Plaintiffs have not presented evidence that the defendants, all of whom were performing a governmental function, displayed the type of malicious conduct required to eliminate Ohio Rev. Code Chapter 2744 immunity.  Thus, the granting of summary judgment is appropriate as to the state claims against the plaintiffs in favor of the defendants.

21

**XV.**

In accordance with the foregoing, defendants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motions for Summary Judgment as to plaintiff Martha Thompson are **GRANTED IN THEIR ENTIRETY**.  Martha Thompson's claims are **DISMISSED WITH PREJUDICE** as to all defendants**.**  Defendants' Motions for Summary Judgment are **DENIED** as to plaintiff Whitt's §1983 claims against defendant Goins in his individual capacity.  The Motions for Summary Judgment are **GRANTED** in favor of the Village of New Boston and the City of Portsmouth and Captain Goins in his official capacity on all federal claims.  The Motions for Summary Judgment on all state law claims are **GRANTED** in favor of all defendants and against both plaintiffs.

The Village of New Boston, the City of Portsmouth and Captain Goins in his official capacity are **DISMISSED WITH PREJUDICE**.  The matter will proceed to trial on plaintiff Whitt's § 1983 claims against defendant Goins in his individual capacity according to the schedule previously established by this Court.

**IT IS SO ORDERED**.

_____s/Herman J. Weber_____
Herman J. Weber, Senior Judge
United States District Court
